IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

ERIC FOSS,
   *Defendant.*

Criminal Action No. ELH-19-115

**MEMORANDUM OPINION**

Defendant Eric Foss is serving a sentence of forty-two months of imprisonment for conspiracy to distribute cocaine. Through counsel, he has filed an emergency motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 187), supported by a memorandum (ECF 187-1) (collectively, the "Motion") and several exhibits.[1] ECF 187-2 to ECF 187-5. Foss asks the Court to reduce his sentence to time served. The government opposes the Motion. ECF 190. Defendant has replied. ECF 192. Defendant has also submitted supplemental correspondence. ECF 202.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I. Background**

Foss was indicted on March 12, 2019, along with six others. ECF 1. He was charged in Count One with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(C), 846. *Id.* at 1, 3.

---

[1] Foss previously submitted correspondence to the Court, construed as a motion for compassionate release. ECF 145. By Order of August 14, 2020 (ECF 149), I denied that motion, without prejudice, noting that Foss had not indicated whether he exhausted his administrative remedies.

On September 27, 2019, Foss entered a plea of guilty to Count One (ECF 75), pursuant to a Plea Agreement. ECF 77. The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a sentence ranging between 37 and 46 months' imprisonment. *Id.* ¶ 9.

The Plea Agreement included a stipulation of facts. *Id.* at 9. It reflects that during October and November of 2018, Foss was supplied with "distribution quantities of cocaine" by "Coconspirator-1." *Id.* Investigators intercepted defendants' communications, which revealed that he "would frequently request what the investigators determined to be 2 to 3 ounces of cocaine from Coconspirator-1, and that the two would meet near Foss'[s] residence . . . in Baltimore City[,] Maryland or at businesses in the area shortly after these communications." *Id.* In particular, the stipulation describes intercepted communications between Foss and Coconspirator-1 on October 11, 2018, which were exchanged shortly before the two men met near Foss's residence. *See id.* Investigators determined "that the language used by Foss and Coconspirator-1 was consistent with a purchase of 3 ounces of cocaine." *Id.*

During October and November of 2018, "several similar exchanges were intercepted . . . ." *Id.* Investigators determined that several of the intercepted exchanges referred "to ounces of cocaine" and "arrangements for Foss and Coconspirator-1 to meet." *Id.* In addition, investigators "identified several patterns" in the exchanges, "including that Conspirator-1 would often report that he was coming from 'the stadium' when he was on the way to deliver narcotics to Foss." *Id.* Law enforcement deduced that Coconspirator-1 would obtain cocaine to supply to Foss from "an address near Camden Yards stadium," which served as the "residence of other coconspirators." *Id.* And, on November 9, 2018, investigators observed another meeting between Foss and Coconspirator-1, after intercepting communications believed by investigators to contain a request by Foss for two ounces of cocaine. *See id.* at 9-10.

On November 15, 2018, law enforcement executed search warrants at various locations linked to the conspiracy. *Id.* at 10. Several kilograms of suspected cocaine were found at one "stash location" used by Coconspirator-1, and additional quantities of cocaine, heroin, and other narcotics were recovered from an address near Camden Yards. *Id.* In addition, a total of $4,560.00 in cash was seized from Foss's residence and from his person. *Id.*

Foss stipulated that it was reasonably foreseeable to him that the conspiracy involved more than 400 grams but less than 500 grams of cocaine. *Id.* Further, he agreed that the cocaine was intended for distribution. *Id.*

Pursuant to Fed. R. Crim. P. 32, and at defendant's request, which was unopposed, the Court proceeded directly to sentencing. ECF 187-1 at 2; ECF 190 at 1; *see also* ECF 76; ECF 80. At the time of sentencing, defendant was forty-three years of age. *See* ECF 187-3 at 3 (displaying defendant's date of birth).

The Sentencing Memorandum submitted by defense counsel (ECF 115) reflects that defendant's childhood was marked by challenge. To his credit, defendant obtained his real estate license in 2016. *See* ECF 115 at 4 n.2.

Defense counsel also provided the court with a copy of the Pre-Plea Criminal History Report ("Pre-Plea Report"), dated May 9, 2019. It shows that Foss was twice convicted in 1999 of conspiracy to possess with intent to distribute cocaine. Ple-Plea Report, ¶ 6, 7. He was sentenced to concurrent terms of ten years' imprisonment, of which four years were suspended, and he was released in January 2003. *See id.*

In 2004, defendant pleaded guilty in federal court to conspiracy to distribute cocaine (Legg, J.). *Id.* ¶ 8. He was sentenced to 145 months' imprisonment, followed by four years of supervised

3

release.  *Id.*  Foss was released from prison in June 2014, after serving over nine years for that federal sentence.  *Id.*  Foss successfully completed supervised release in 2018.  *Id.* ¶ 8.

The Court determined that defendant had a final offense level of 19 and a Criminal History Category of III.  ECF 81.  Foss's advisory sentencing Guidelines called for a sentence ranging from 37 to 46 months of incarceration.  *Id.*  That corresponded to the sentencing range to which the parties had agreed, pursuant to the Plea Agreement.  ECF 77, ¶ 9.

The Court imposed a sentence of 42 months' imprisonment, with credit for time served since November 15, 2018.  ECF 80 at 2.  And, the Court imposed a three-year term of supervised release.  *Id.* at 3.

Foss is currently serving his sentence at FCI Allenwood Medium.  ECF 187-1 at 2; ECF 190 at 1; *see also Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 22, 2021).  He has a projected release date of December 31, 2021.  ECF 187-1 at 2; ECF 190 at 2; *Find an inmate*.  Defendant has served approximately 67% of his sentence, and nearly 75% of his sentence when accounting for good-time credit.

Notably, Foss incurred multiple disciplinary infractions while serving both of his federal sentences.  During his first federal sentence, defendant was twice sanctioned for committing an assault.  ECF 190-1 at 2-3.  Defendant's BOP disciplinary records indicate that defendant was intoxicated when he committed one of the assaults.  *Id.*  In addition, he incurred infractions for threatening bodily harm, destroying property, refusing to take an alcohol test, and being insolent to a staff member, among other things.  *Id.* at 2-4.

More significantly, in the course of his current sentence, defendant has been sanctioned several times.  In particular, he has been sanctioned for punching another inmate, using drugs (buprenorphine), refusing to obey an order, and being insolent to a staff member.  *Id.* at 1-2.

Foss states that he is "sincerely remorseful for his prior criminal activities and has done his very best to use his time while in BOP custody to inculcate within himself new ideas, attitudes, and beliefs that will allow him to successfully negotiate the harsh vicissitudes of life outside the walls of a prison without resorting to criminal conduct." ECF 187-1 at 13. In addition, defendant has submitted correspondence from his partner of more than three years. ECF 187-5. She states that upon defendant's release, he will live with her and her two children. *Id.* Defendant also has "employment waiting for him" as a salesperson at a construction company. Moreover, defendant's partner has stable employment and will "be able to provide financial support" as defendant transitions "back into society." *Id.*

In a supplemental submission, dated January 14, 2021, Foss informed the Court that he recently tested positive for COVID-19. ECF 202.

Foss submitted a request for compassionate release to the Warden on July 30, 2020. ECF 192-1. The request was promptly denied. *Id.*

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon

a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release. *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

6

> (i) extraordinary and compelling reasons warrant such a reduction;
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be

7

based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e*., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence. Application Note 1(C) concerns Family Circumstances. Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

8

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"). However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283. Therefore, district courts are "'empowered…to consider any extraordinary and

9

compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020). But, compassionate release is a "rare" remedy. *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III. COVID-19

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[2] The World Health

---

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. As of March 23, 2021, COVID-19 has infected nearly 30 million Americans and caused over 543,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Mar. 23, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus. But, the country has recently seen the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson). The vaccines were initially made available to health care workers and the elderly in nursing homes. But, the criteria for eligibility has expanded considerably and varies among the States.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f. As of March 23, 2021, the BOP had 124,779 federal inmates and 36,000 staff. And, by that date, the BOP had administered 88,026 vaccine doses to staff and inmates. *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021).

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019*

*(COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.  *Id.*  The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk. *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020).  Social distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2;

*Senate Judiciary Hrg. Transcript on Incarceration during COVID-19*, REV.COM (June 2, 2020) (Testimony of BOP Dir. Michael Carvajal at 47:00) ("Prisons by design are not made for social distancing. They are on [sic] the opposite made to contain people in one area."). Indeed, prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high.").

To illustrate, prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. *See* Kim Bellware, *Prisoners and Guards Agree About Federal Coronavirus Response: 'We do Not Feel Safe*,' WASH. POST (Aug. 24, 2020) (reporting use of non-reusable masks for months and a lack of transparency around policies for PPE and testing). They do not get to decide where, when, or how to eat or sleep. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

15

As with the country as a whole, the virus persists in penal institutions.[3]  As of March 23, 2021, BOP reported that 451 inmates out of a total of 125,458 inmates, and 1,363 BOP staff out of some 36,000 staff members, currently test positive for COVID-19; 47,097 inmates and 5,298 staff have recovered from the virus; and 226 inmates and four staff members have died from the virus.  Moreover, the BOP has completed 107,748 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021).

With respect to FCI Allenwood Medium, where the defendant is now a prisoner, as of March 23, 2021, the BOP reported that one inmate and no staff have tested positive for COVID-19 and 289 inmates and 19 staff have recovered at the facility.  And, at the Allenwood complex, 331 staff and 368 inmates have been inoculated with the vaccine.  *See* https://www.bop.gov/coronavirus/ (last accessed Mar. 23, 2021).

### IV. Discussion

Foss has moved for compassionate release on the ground that his health conditions render him particularly vulnerable to COVID-19.  *See* ECF 187-1 at 6-9.  In particular, he is obese, with a BMI of 36.1.  ECF 187-1 at 7.  The government concedes that that the defendant's obesity

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.  More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems."  *America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

satisfies the "extraordinary and compelling" prong of the § 3582 analysis. ECF 190 at 16. Accordingly, I am satisfied that Foss satisfies the "extraordinary and compelling" requirement. However, that does not end the inquiry.

Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Foss acknowledges the seriousness of his offense. ECF 187-1 at 12. But, he notes that the offense did not involve "allegations of violence or the possession of weapons." *Id.* In addition, defendant asserts that if his sentence were reduced to time served, it would nonetheless accomplish the sentencing objectives of both general and specific deterrence. *Id.* Moreover, defendant states that the correspondence submitted by his partner, described *supra*, shows that he has a promising plan in place for his reentry to society. *Id.* at 13.

The government counters that Foss remains a danger to the community. ECF 190 at 17. First, the government emphasizes the seriousness of Foss's offense, highlighting that "more than

17

400 grams of cocaine was [sic] attributed to him during the course of the conspiracy . . . ." *Id.* at 18. Second, the government raises concerns about Foss's criminal history, his disciplinary record during service of his two federal sentences, and his persistent substance use issues. *Id.* at 18-19. According to the government, these facts "weigh towards a finding that the defendant still poses a danger to the community through risk of recidivism." *Id.* at 19.

Defendant's history paints a troubling picture. As noted, he has prior drug convictions and previously served a lengthy federal sentence for conspiracy to distribute cocaine. That should have deterred him from any further wrongdoing.

Moreover, defendant's disciplinary record reflects acts of misconduct committed during both sentences. And, defendant has continued to use drugs and alcohol, as reflected by an assault he committed in 2009, while intoxicated, ECF 190-1 at 2; a DUI conviction in 2015; and a BOP disciplinary infraction for use of buprenorphine in 2020. Notably, Foss does not address the concerning nature of his criminal history, his BOP disciplinary record, or his continued substance abuse.

Foss's behavior while in BOP custody is an important indicator of whether he remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020); *cf. United States v. McDonald*, 986 F.3d 402 (4th Cir. 2021) (noting that on a motion to reduce sentence under the First Step Act, district court must consider defendant's post-sentencing conduct); *United States v. Randall*, __ F. App'x __, 2021 WL 796428, at *1 (4th Cir. Mar. 2, 2021) ("[A] district court must provide an individualized explanation for denying a

sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation); *United States v. Rudisill*, 834 F. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct).

Here, the facts show that defendant has manifested an inability to conform his behavior to reasonable societal expectations. Moreover, Foss had previously served a lengthy period of incarceration in regard to his first federal offense, which also involved distribution of cocaine, yet this did not deter his continued course of drug distribution activity. Despite the length of his previous sentence, defendant continued down the wrong path.

Defendant has already served roughly three-quarters of his sentence, allowing for good-time credit. But, given the serious facts of the offense and the relatively abbreviated time that defendant has been incarcerated, coupled with the defendant's prior criminal history and disciplinary record, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

## V.  Conclusion

For the foregoing reasons, I shall deny the Motion.

An Order follows, consistent with this Memorandum Opinion.

Date:   March 31, 2021                                             /s/
                                                          Ellen Lipton Hollander
                                                          United States District Judge